Roland L. Belsome, Judge.
|,In this criminal appeal, the defendant, Brian A. Aguillard, Sr., challenges his conviction. Finding that the defendant was erroneously deprived of a peremptory challenge, we vacate the defendant’s conviction and remand for a new trial.

PROCEDURAL HISTORY

The defendant was charged by bill of information with illegal use of a weapon. He pled not guilty at arraignment. After a hearing, the trial court denied his motions to suppress the evidence and identification and found probable cause. Following a jury trial, the defendant was found guilty as charged. He was later sentenced *979 to eighteen months at hard labor. This appeal followed.

FACTUAL BACKGROUND

On December 18, 2011, the defendant was arrested for discharging his firearm four times outside of his residence located at 8529 Hamburg Street, in New Orleans. Earlier, the' defendant’s fraternal twin, Brett Aguillard, was engaged in a drug related argument with another male at “PJ’s Bar and Grill,” which was located a few houses down from their Hamburg Street residence, which they ^shared with their mother, Deatrice Aguillard.[1] During the argument, another male drove up, exited his vehicle, and struck Brett Aguillard in the face with a gun. Brett Aguillard ran home and the other two males left the scene in their vehicles.
Approximately fifteen minutes later, the defendant arrived home from a Christmas party and entered his residence. Shortly thereafter, the defendant emerged and fired his gun. The defendant was then observed walking toward the bar. At the same time, a bar patron walked down the street to meet the defendant and another argument ensued. Following that encounter, the defendant walked back to his residence and fired three more shots.
Police officers responding to the scene knocked on the door to the defendant’s residence to ask if they had heard gunshots in the area. The defendant and his mother answered the door and stated that they did not hear anything; however, one of the officers noticed that he fit the description given by Jason Ray, a private security guard at the bar. The officers left the residence in order to clarify the description of the suspect with Mr. Ray. After confirming that the suspect, who was wearing all black, fled into the residence located at 3529 Hamburg Street, the officers returned to the home to detain the defendant, who was the only occupant wearing all black. While approaching the residence for the second time, the occupants were overheard yelling: “[Y]ou could have been shot. You’re stupid.”
Officers knocked at the door of the residence again, and searched the home. As a result of the search, a semi-automatic pistol, later found to be registered to the defendant, was recovered from under his mattress, and the defendant was placed under arrest. Mr. Ray also identified the defendant on the scene after he was [¡¡arrested. Four fired cartridge casings were recovered from the street directly in front of the residence. Further testing revealed that the casings were fired from the defendant’s weapon.

DISCUSSION

The defendant raises two assignments of error related to sufficiency of the evidence and the deprivation of a peremptory exception. In his sufficiency assignment of error, the defendant contends that the evidence was insufficient to support the conviction because the State failed to prove his identity as the shooter. He argues that the State did not negate the reasonable probability of misidentification, and suggests that the jury could not reasonably exclude Brett Aguillard as the shooter.
When reviewing the sufficiency of the evidence to support a conviction, this Court is controlled by the standard set forth by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which dictates that to affirm a conviction “the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved *980 beyond a reasonable doubt.” State v. Captville, 448 So.2d 676, 678 (La.1984).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of “proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.” State v. Shapiro, 431 So.2d 372, 378 (La.1982) (citation omitted). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. \¿Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198, 1201 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817, 821 (La.1987).
In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Robinson, 02-1869, p. 16 (La.4/14/04), 874 So.2d 66, 79 (citation omitted). Under the Jackson standard, the rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court. State v. Juluke, 98-341 (La.1/8/99), 725 So.2d 1291, 1293 (citation omitted). “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992) (citation omitted).
“A fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Where rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned.” State v. Winston, 11-1342, p. 8 (La.App. 4 Cir. 9/12/12), 100 So.3d 332, 337 (citations omitted).
When the identity of the defendant as the perpetrator is disputed, the State must negate any reasonable probability of misidentification in order to satisfy its burden under Jackson v. Virginia, supra. State v. Galle, 11-930, p. 31 (La. App. 4 Cir. 2/13/13), 107 So.3d 916, 935 (citation omitted). The appellate court also | .^reviews the reliability of an identification in accordance with the factors set out in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), which are: 1) the opportunity of the witness to view the assailant at the time of the crime; 2) the witness’s degree of attention; 3) the accuracy of the witness’s prior description of the assailant; 4) the level of certainty demonstrated by the witness; and 5) the length of time between the crime and the confrontation. State v. Stewart, 04-2219, p. 6 (La.App. 4 Cir. 6/29/05), 909 So.2d 636, 639. Further, a positive identification by only one witness is sufficient to support a conviction. State v. Leger, 05-11, p. 92 (La.7/10/06), 936 So.2d 108, 170 (citations omitted).
In the instant case, Mr. Ray, an unbiased witness, identified the defendant as the shooter, when presented with both the defendant and his twin brother. He testified that the area in which he observed the defendant was well lit. He supplied a physical and clothing description of the defendant — light complected black male, weighing two hundred and forty pounds, dressed in all black clothing and standing about 5'10 tall. Consistently, the defendant, as well as his mother, girlfriend, and aunt all agreed that he was *981 wearing all black. Mr. Ray positively identified the defendant as the shooter within minutes of the incident when the police transported the defendant and Brett Aguillard back to the bar for a show up.
Even though defense witness William Aguillard, the defendant’s younger brother, testified that Brett Aguillard was the shooter, Mr. Ray was certain of his identification of the defendant. Earlier, he observed Brett Aguillard — wearing a plaid shirt, blue jeans, and timberland boots with twists in his hair — get hit in the face with a pistol two feet away from him just outside of the front door of the bar. He later had an opportunity to observe the defendant exiting his mother’s van just before the shooting. He testified that there was no way to confuse the two because | fiof the difference in their facial hair, height, weight, and clothing. Likewise, the defendant’s younger brother, mother, and girlfriend all admitted that the defendant was larger in stature when compared to his twin brother. His mother also testified that Brett Aguillard wore twists in his hair, and had facial hair, as opposed to the defendant, who did not. Under these circumstances, we find that the identification was reliable. We further find that the State negated any reasonable likelihood of misidentification through the testimony of Mr. Ray, as well as other defense witnesses that corroborated the physical distinctions between the defendant and Brett Aguillard.
The jury clearly gave credence to Mr. Ray’s identification of the defendant as the shooter. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the defendant illegally used his weapon in response to the earlier altercation involving his twin brother. Accordingly, we find there was sufficient evidence to support the defendant’s conviction.
In his remaining assignment of error, the defendant argues that the trial court erred by refusing his challenge for cause, thus depriving him of a peremptory exception. We agree.
Prejudice is presumed when a trial court erroneously denies a challenge for cause and the defendant has exhausted his peremptory challenges. An erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error. State v. Cross, 93-1189, p. 6 (La.6/30/95), 658 So.2d 683, 686 (citations omitted). A trial court is vested with broad discretion in ruling on challenges for cause, and these rulings will be reversed only when review of the voir dire record as a whole reveals an abuse of discretion. 17 Cross, 93-1189 at 7, 658 So.2d at 686-87 (citations omitted). In this case, the defendant exhausted his peremptory challenges, thus the only issue before us is whether the trial court erred when it denied his challenge for cause.
The defendant claims the trial court should have excused Lieutenant Mark Mulla for cause based on his employment relationship with the State’s witnesses and investigators in the case. The grounds for a challenge for cause are set out in La. C.Cr.P. art. 797 which provides in pertinent part:
The state or a defendant may challenge a juror for cause on the ground that:
[[Image here]]
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
*982 (8) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict[.]
Although personal connections to and relationships with law enforcement personnel do not, by themselves, disqualify prospective jurors for cause, such associations and relationships are subject to careful scrutiny. State v. Alexander, 620 So.2d 1166, 1167 (La.1993) (citation omitted). If bias or prejudice may be reasonably attributed to the relationship or association, the juror should be excused for cause. Alexander, supra (where the Louisiana Supreme Court found that a prospective juror’s employment with the Attorney General’s office and her active duties as substitute prosecutor for the District Attorney were relationships which could have influenced her juror duties, such that bias in favor of the prosecution | shad to be inferred and there was error in denying the challenge for cause in criminal case).
In this case during voir dire, Lieutenant Mulla testified that he was an NOPD officer for twenty-three years and had testified in court before. He also stated that he was the commander of the Third District investigative unit, the unit which investigated the instant crime. He recognized the State’s witness Detective Ca-brellaro, who was his supervisor, and he also knew Jim O’Hearn, an investigator for the District Attorney’s office, from working with him. The record also revealed that Detective Russell Green, who testified for the State in this case, was also assigned to the Third District investigative unit.
Determinations on excluding a prospective juror for cause are made on a case-by-case basis. State v. Ballard, 98-2198 (La.10/19/99), 747 So.2d 1077, 1080. We are aware that there is no longer a per se rule requiring the automatic disqualification of a prospective juror simply because of his status as a police officer. In State v. Ballard, supra, this court overruled State v. Simmons, 390 So.2d 1317 (La.1980), to the extent that it held that police officers actively engaged in law enforcement are incompetent criminal jurors. Ballard, 747 So.2d at 1080. In his concurrence, Justice Calogero distinguished the circumstances in Simmons from those in Ballard:
As we observed in Simmons, an investigator with the sheriffs office who works closely with the district attorney’s office “must be affected by that employment relationship.” 390 So.2d at 1318. There, we reasoned that such a relationship would have influenced the prospective juror’s verdict, thereby justifying the deputy’s removal for cause under Article 797(3). Id. Here, there is no indication that Officer Schultz as a police officer employed by the City of Baton Rouge had a sufficiently close relationship either with the district attorney’s office in Livingston Parish or with law' enforcement agents in that parish to suggest that the officer might not be fair and impartial.
| ⅜ Ballard, 747 So.2d at 1081, Justices Ca-logero and Lemmon concurring.
Unlike in Ballard, the circumstances of the instant case are such that it is reasonable to conclude that Lieutenant Mulla’s employment relationship would unduly influence his verdict. The fact that he was the commander of the Third District investigative unit, the very unit responsible for the instant investigation, coupled with the fact that a State’s witness, Detective Ca-brellaro, was his supervisor makes it clear that he should have been excused for cause. Thus, the trial court abused its discretion in failing to strike Lieutenant *983 Mulla for cause, consequently requiring the defendant to exercise a peremptory strike. This constitutional and statutory violation warrants a new trial.
Accordingly, the defendant’s conviction is vacated and the case is remanded for a new trial.
CONVICTION VACATED; MANDED. RE-

. Mrs. Aguillard owned the home.