Judge Roland L. Belsome
The Defendant, Joseph Morgan, seeks review of his second degree murder conviction and sentence. For the following reasons, we affirm the conviction; vacate the sentence and remand the case for re-sentencing.
STATEMENT OF THE CASE
On May 29, 2008, the Defendant[1] was indicted with the second degree murder of Gervais Nicholas.[2] He pled not guilty at arraignment. After a four-day trial, a twelve-person jury found the Defendant guilty as charged.[3] The trial court denied the Defendant's motion for new trial and granted an appeal. Subsequently, the Defendant was sentenced to life in prison *571 with the possibility of parole.[4] On the same day, a notice of appeal was issued.[5] This appeal followed.[6]
STATEMENT OF FACT
The charges against the Defendant stem from a gang-related homicide that occurred on January 12, 2008, at the Chat Room, a teenage nightclub located on Tulane Avenue and South Lopez Street. On the night of the incident, the Chat Room was hosting a sixteenth birthday party, during which multiple fights erupted. As the security guards began removing the participants, several fights continued.
Outside, the victim, Gervais Nicholas,[7] was being held on the ground, near the median, by multiple individuals. Two males, later identified as the Defendant, Morgan, and Tavion Aples, were observed running across Tulane Avenue. They returned to the scene with guns. At that time, Morgan and Aples shot the victim multiple times, fatally injuring him.[8] Then, they fled the scene in different directions. After an investigation involving state and federal authorities, Morgan was arrested pursuant to an arrest warrant.
ERRORS PATENT
The record shows that defense counsel was not present with the Defendant at the sentencing hearing. The trial court specifically noted counsel's absence. Additionally, both the docket master and the minute entries provided that the Defendant "appeared without counsel for sentencing."
In State v. Hall, 99-2887, p. 16 (La. App. 4 Cir. 10/4/00), 775 So.2d 52, 62-63, this Court set forth the law regarding a sentence imposed in the absence of counsel:
La. Const. art. I, § 13 recognizes the right to the assistance of counsel at every stage of the proceedings against a person accused of a crime. State v. White , 325 So.2d 584, 585 (La.1976). Likewise, the constitutional right to the assistance of counsel provided by the Sixth Amendment of the United States Constitution mandates the right, unless waived, to the assistance of counsel at every critical stage of the proceedings, including an initial or deferred sentencing. McConnell v. Rhay , 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968). Unless a defendant has made a knowing and intelligent waiver of his right to counsel, any sentence imposed in the absence of *572 counsel is invalid and must be set aside. State v. Williams , 374 So.2d 1215, 1217 (La.1979).[9]
Since the record unequivocally provides that defense counsel was absent and there is no indication that the Defendant waived his right to counsel, the sentence imposed is invalid and must be vacated.[10] Accordingly, the Defendant's sentence is vacated and the case is remanded for re-sentencing.[11]
DISCUSSION
The Defendant raises three assignments of error concerning: 1) jury selection, 2) the admission of testimonial evidence, and 3) sentencing. Having already addressed the sentencing error in our errors patent, we turn to the two remaining assignments of error.
In his first assignment of error, the Defendant contends that the trial court erred in excusing for cause prospective juror, Timothy Charles.[12] La. C.Cr.P. art. 797 provides that the state or the defendant may challenge a juror for cause if:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient grounds for challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence; [or]
***
(4) The juror will not accept the law as given to him by the court[.]
La. C.Cr.P. art. 798(1) also provides good cause for the state to challenge a juror where "[t]he juror is biased against the enforcement of the statute charged to have been violated, or is of the fixed opinion that the statute is invalid or unconstitutional."
During voir dire , Mr. Charles initially stated at the outset that he could not apply the law knowing the Defendant, if convicted, could be sentenced to life imprisonment.[13] Upon further questioning by the State, Mr. Charles appeared confused concerning *573 the prosecution's burden of proof based on earlier instructions provided to the panel.[14] After the State explained it had to establish its case beyond a reasonable doubt, not beyond all possible doubt, for Mr. Charles to convict the Defendant, Mr. Charles responded "okay." However, defense counsel subsequently asked Mr. Charles whether he could find the Defendant guilty if he was "one hundred percent positive" that the State proved its case "without a doubt" and Mr. Charles replied: "I possibly can." Mr. Charles also testified he would render a verdict irrespective of the sentence if there was a "smoking gun."[15] However, after defense counsel clarified the State's burden was beyond a reasonable doubt, Mr. Charles stated that he would be able to follow the law and fairly render verdict.
Thereafter, the State moved to strike Mr. Charles for cause arguing that he would not be able to render a verdict of guilty. The State claimed that Mr. Charles only answered that he would be able to find the Defendant guilty after defense counsel misrepresented the burden of proof required to convict. After hearing arguments from both the prosecution and the defense, the trial court granted the State's challenge for cause.[16]
The Defendant argues that there was no basis for the trial court to grant the State's challenge for cause because once defense counsel explained the law, Mr. Charles indicated that he would follow the law and render a verdict regardless of the sentence imposed. However, it is well established that when assessing whether a challenge for cause should be granted, the trial judge must look at the juror's responses during his or her entire testimony, not just "correct" isolated answers or, for that matter, "incorrect," isolated answers. State v. Washington , 15-0819, pp. 4-5 (La. App. 4 Cir. 2/17/16), 187 So.3d 71, 74, writ denied, 16-0488 (La. 3/31/17), 217 So.3d 358 (citation omitted). Thus, despite Mr. Charles eventually indicating he would to be able to render a verdict based on the law as instructed, his responses as a whole displayed confusion as to the applicable burden of proof and reluctance to find the Defendant guilty given the mandatory life sentence. See State v. Mickelson , 12-2539, p. 13 (La. 9/3/14), 149 So.3d 178, 187 (citations omitted)(noting a challenge for cause should be granted, even when a prospective juror declares his or her ability to remain impartial, if the juror's responses, as a whole, reveal facts from which bias, prejudice, or inability to render a judgment according to law may be reasonably inferred).
*574 A trial judge is vested with broad discretion in ruling on challenges for cause, and such a ruling is subject to reversal only when a review of the entire voir dire reveals the judge abused his discretion. State v. Dotson , 16-0473, p. 5 (La. 10/18/17), 234 So.3d 34, 39 (citation omitted). This standard of review is utilized "because the trial judge has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questions by the parties' attorneys." Id. , p. 17, 234 So.3d at 45 (citations omitted). "Such expressions and intonations are not readily apparent at the appellate level where review is based on a cold record." Id. Considering the trial court's enhanced perspective in evaluating a prospective juror, along with Mr. Charles' equivocal responses concerning his willingness and ability to apply the law correctly, we cannot find that the trial court abused its discretion in granting the State's challenge for cause concerning Mr. Charles.
In his second assignment of error, the Defendant asserts that the trial court erred in allowing Federal Bureau of Investigation Agent Jim McNelis to testify regarding statements made by another witness, Bruce Simmons. Simmons, who "grew up with" the Defendant, testified in the State's case-in-chief that the Defendant (also known as "Joey Cracker") and the Defendant's brothers, Josh and Jermaine Morgan (also known as "Pookie"), were upstairs inside the Chat Room with him at the time of the shooting. Simmons denied making a statement to an FBI agent that Josh was worried when the shooting occurred because he could not find his brother, Joey Cracker. Later during trial, Agent McNelis testified that when he spoke with Simmons the day after the incident, Simmons said only Pookie and Josh were with him inside the club when the fight began outside and that Josh was concerned because he could not find Joey Cracker. Agent McNelis also stated that Josh used Simmons' cell phone and again conveyed that he was concerned about "his brother, Joey Cracker, because he was outside the club." Agent McNelis further indicated that Simmons permitted him to look at his cell phone to confirm the telephone calls were placed. Defense counsel objected to Agent McNelis testimony as hearsay.[17] In response, the State argued that it was entitled to impeach Simmons' former testimony. The trial court overruled the objection.[18]
On appeal, the Defendant does not specifically challenge Agent McNelis' testimony based on hearsay. In fact, he concedes Simmons' prior statement is non-hearsay under La. C.E. art. 801(D)(1)(a).[19] Instead, the Defendant claims that the State called Simmons as subterfuge in order to introduce his prior statement into evidence in violation of Whitehurst v. Wright , 592 F.2d 834, 839 (5th Cir. 1979) (where the Fifth Circuit held "impeachment by prior inconsistent *575 statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible.") (citation omitted).[20]
First, the Defendant did not specifically state these grounds during his objection in the trial court. La. C.Cr.P. art. 841(A) requires that a defendant present the grounds upon which an objection is made, and a defendant is limited on appeal to those grounds made at the time of the objection. See also , State v. Jackson, 450 So.2d 621, 634 (La. 1984) (citation omitted) (a defendant must state the basis for his objection to provide the trial judge with an opportunity to make the proper ruling and prevent or cure an error.) Since the Defendant failed to object on this basis in the trial court, the issue is not preserved for appellate review.
Nevertheless, a review of the trial transcript does not suggest that the State's primary intention of calling Simmons to testify was to introduce otherwise inadmissible testimony into the record. Although the record establishes that Simmons was incarcerated at the time of trial on a material witness bond because he did not want to cooperate with the prosecution, it also reveals that the State was under the impression that Simmons was going to provide testimony consistent with the statement he provided Agent McNelis, i.e. that the Defendant was not on the second floor of the Chat Room at the time of the shooting. The State further maintained in its closing arguments that Simmons' testimony on the stand was a surprise. In particular, the State indicated that had it known that Simmons would provide the Defendant with an alibi, it would not have called Simmons as a witness for the State.[21] Given that the record suggests that the State was unaware that Simmons' testimony was going to be inconsistent with his earlier statement, we do not find that the State merely called Simmons as subterfuge to introduce the contents of his statement to Agent McNelis into evidence.
Moreover, other witnesses placed the Defendant outside the Chat Room around the time of the shooting, which corroborates Simmons' previous statement. In particular, Kendrell Martin, who was close to the victim during the incident, identified the Defendant as the person who killed the victim. Sandy Ruffin, a security guard at the Chat Room, also testified at trial that the Defendant was one of the shooters outside the club. Charles Harris, who knew both the victim and the Defendant from his prior employment as a camp counselor, identified the Defendant as the *576 first to shoot and testified that the Defendant killed the victim. Thus, the prior inconsistent statement was admissible as substantive evidence. See La. C.E. art. 801(D)(1)(a) ; State v. Duncan, 11-0563, p. 25 (La. App. 4 Cir. 5/2/12), 91 So.3d 504, 520 (providing that the witnesses' prior inconsistent out-of-court statements could be admitted as substantive evidence of the offense rather than solely for purposes of impeachment where there was evidence corroborating the prior inconsistent statements).
Finally, considering the plethora of evidence placing the Defendant at the crime scene,[22] the verdict was surely unattributable to any error in admitting the evidence. See State v. Thomassie , 16-0370, p. 11 (La. App. 4 Cir. 12/21/16), 206 So.3d 311, 317, writ denied , 17-0186 (La. 2/24/17), 216 So.3d 60 (the erroneous admission of evidence is subject to the harmless error analysis). As such, any error on part of the trial court in admitting Agent McNelis' testimony as to Simmons' prior inconsistent statement was harmless.
CONCLUSION
Considering the foregoing, the Defendant's conviction is affirmed. However, the sentence is vacated and the case is remanded for re-sentencing.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED

At the time of the offense, the Defendant was a juvenile.

The bill charged Defendant and Taivon Aples with second degree murder. The trial court subsequently granted a motion to sever their trials on December 9, 2011.

Though the trial court noted that the verdict was in proper form and responsive to the bill of indictment, it is unclear as to whether the verdict was unanimous.

At the sentencing hearing, the trial court explained that the Defendant's life sentence would include the possibility of parole, pursuant to Miller v. Alabama , 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), due to the fact that the Orleans Parish Public Defender's Office could not provide funding for the necessary expert to testify on sentencing issues.

The record reveals that the trial court granted Defendant's motion for appeal prior to sentencing. Thus, the motion for appeal was granted prematurely. Although a defendant can take an appeal only from a conviction and sentence, this Court has held that an appeal taken prior to sentencing will not be dismissed "because '[d]ismissing the appeal would simply result in a delay of the appellate process and hinder defendant's right to appeal.' " State v. King , 15-0770, p. 3 (La. App. 4 Cir. 12/23/15), 184 So.3d 215, 217-18 (citations omitted). Therefore, the error in this regard is harmless.

This Court granted the Defendant's motion to file a supplemental brief. The brief was due on April 5, 2018. As of the date of this opinion, the Defendant has not filed his supplemental brief.

The victim (also known as "G" or "Gee") was a member of the Get Money Boys gang.

The testimony specifically revealed that the Defendant shot first while Aples pointed his gun towards the crowd. As the victim was attempting to crawl to the neutral ground, Aples shot the victim again followed by additional shots from the Defendant.

See also La. C.Cr.P. art. 511 ("[t]he accused in every instance has the right to defend himself and to have the assistance of counsel"); La. C.Cr.P. art. 514 ("[t]he minutes of the court must show either that the defendant was represented by counsel or that he was informed by the court of the defendant's right to counsel, including the right to court-appointed counsel, and that he waived such right"); and State v. Washington , unpub. 07-1474, 2008 WL 8927869, at *2 (La. App. 4 Cir. 5/21/08) (vacating the defendant's sentence when the transcript indicated only the defendant and assistant district attorney appeared and no defense counsel was present for resentencing hearing).

The Defendant raises this issue in one of his assignments of error and the State concedes in its brief that the matter should be remanded for resentencing.

Additionally, the trial court did not include that the sentence was to be served at hard labor without the benefit of probation or suspension of sentence. Although these issues are self-correcting, any omission is moot since the sentence is vacated.

A defendant does not have grounds to complain about the granting of a prosecution's challenge for cause, unless the effect of the ruling is to allow the prosecution to exercise more peremptory challenges than is allowed by law. La. C.Cr.P. art. 800(B) ; see also State v. Nellum , 13-0360, p. 12 (La. App. 4 Cir. 2/12/14), 136 So.3d 120, 128. Here, the prosecution used all twelve of its peremptory challenges. Thus, the Defendant has a ground for complaint.

Specifically, the State questioned each juror about whether he or she could render a guilty verdict knowing that the sentence for second degree murder is life in prison, and Mr. Charles responded "no, no, no."

Mr. Charles stated :
Did you say beyond a reasonable doubt or beyond possible reasonable-beyond possible reasonable doubt, that's where I have to be there beyond all possible reasonable, beyond possible reasonable doubt, because you are saying you have to be there. Beyond a reasonable case means your case is proven by, you know, common sense and facts. That is what you are saying?
Then the State explained that it believed he understood correctly, explaining that jurors evaluate the evidence using common sense. Mr. Charles then explained that "the judge down stairs" described two burdens "beyond a reasonable doubt and beyond possibility."

As noted by the State in its brief, no gun was recovered in this case.

Though the Defendant did not raise an objection by incantation, the record establishes that the Defendant made his desire to retain Mr. Charles known at the time of the ruling. While defense counsel accepted the State's for cause strikes of other jurors without argument, he argued that Mr. Charles was rehabilitated. See La. C.Cr.P. art. 841 ; State v. Clark , 12-0508, p. 99 (La. 12/19/16), 220 So.3d 583, 663.

Defense counsel also objected to Agt. McNelis' testifying about what Simmons' overheard on the telephone call as double hearsay. The trial court also overruled this objection.

Defense counsel also subsequently raised the issue in its motion for new trial, which was also denied by the trial court.

La. C.E. art. 801(D)(1)(a) provides a statement is not hearsay if the "declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is *** [i]n a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness' attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement."

La. C.E. art. 607(A) provides that a witness's credibility may be attacked by any party, including the party calling him. Article 607 Subsection (D)(2) specifically allows the introduction of prior inconsistent statements to contradict a witness's testimony. However, the Defendant points out that the comments to the La. C.E. art. 607(A) provide that "the court should prohibit a party's attacking the credibility of his own witness when it is clear that he is doing so primarily with the intention or effect of adducing otherwise inadmissible evidence, typically a prior inconsistent statement, on the pretext of attacking credibility." La. C.E. art. 607, 1998 Comment (a) (citations omitted).

The transcript provides, in part:
Ladies and Gentlemen, if he had told me that the defendant was with him at the time of the murder upstairs in the club, he certainly wouldn't have been a State witness, we wouldn't have been calling him. That day in court was the first time he had ever said anything like that and it was when he got into court and took that stand and was facing Joseph Morgan and his entire group that was sitting behind him.

In particular, Harris, Ruffin, and Martin all identified the Defendant as one of men who shot the victim. Ronnie Jessemy, Jr., the owner of the Chat Room, described one of the perpetrators as "small and skinny" "with twists, with dreads" and a photograph taken the night of shooting shows that Defendant had braids or dreads. The 911 calls introduced by the State also indicated that one suspect in the shooting was slim, had dreads, and was light skinned, which was consistent with other witnesses' description and the Defendant's appearance at the time.