# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-800

**STATE OF LOUISIANA**

**VERSUS**

**ANTONIO MERQUIS HARRIS**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 325,997
HONORABLE HARRY FRED RANDOW, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JONATHAN W. PERRY,
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of D. Kent Savoie, Candyce G. Perret, and Jonathan W. Perry, Judges.

**CONVICTION REVERSED, IN PART,
AND THAT SENTENCE VACATED;
OTHER CONVICTIONS AFFIRMED;
SENTENCE AMENDED, IN PART;
CASE REMANDED WITH INSTRUCTIONS.**

**Edward K. Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, Louisiana  70602-1641**
**(337) 491-0570**
**Counsel for Defendant/Appellant:**
     **Antonio Merquis Harris**

**Phillip Terrell, Jr.**
**District Attorney**
**John T. Giordano**
**Assistant District Attorney**
**Post Office Box 7358**
**Alexandria, Louisiana  71306-7358**
**(318) 473-6650**
**Counsel for Appellee:**
     **State of Louisiana**

**Antonio Merquis Harris**
**In Proper Person**
**Louisiana State Prison**
**Camp C—Wolf 1**
**Angola, Louisiana  70712**
     **Defendant**

**PERRY, Judge.**

Defendant, Antonio Merquis Harris ("Defendant"), appeals his conviction for armed robbery, a violation of La.R.S. 14:64; possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1; attempted second degree murder, two counts, violations of La.R.S. 14:27 and 14:30.1; intimidating a witness, a violation of La.R.S. 14:129.1; and possession of a stolen firearm, a violation of La.R.S. 14:69.1. With the exception of Defendant's conviction for possession of a stolen firearm, which we reverse, we affirm Defendant's other convictions, amend one of Defendant's sentences, and remand this matter with instructions.

## FACTS

On July 6, 2015, at 5:00 a.m., Andrew Davis ("Davis"), a Frito-Lay route salesman, stopped at the Save More convenience store in Alexandria, Louisiana. After he loaded empty boxes in the back of his truck, an individual wearing a sweatshirt with a hood approached him. The individual pointed a handgun at Davis and demanded his workbag that contained a check made out to Frito-Lay, cell phones, and a scanner. Also, the individual demanded Davis's wallet and telephone. When he threw his phone to the hooded individual, Davis ran into the convenience store and called the police. Later, Davis would identify Defendant in court as the individual who robbed him.

After speaking with police, Davis returned to work. Between 7:30 a.m. to 8:00 a.m., Davis and his boss drove his boss's vehicle to the area of the robbery to look for Davis's workbag should it have been discarded. As they drove about the area, they saw a few guys staring at them; some were standing on the street and others were standing under a nearby carport. Suddenly, Davis and his boss were fired upon; three bullets struck the passenger door and one struck the outside,

passenger mirror. At that point, Davis and his boss fled the area, drove to Damico's Bingo Hall, and called the police.

In addition to Davis, several witnesses, whose testimony will be elaborated upon later, testified as to Defendant's identity, including Jeraldine Hampton ("Hampton"), an eyewitness to the shooting; and Delric Carpenter ("Carpenter"), an area resident. The jury was also presented with forensic evidence that matched a bullet from the truck with a handgun discarded at Defendant's residence near Davis's cellphone and product scanner. They also heard jailhouse telephone evidence where Defendant admitted the police recovered "my gun, my cell phone, and a check out my safe." The jury also viewed the handgun recovered from the top of Defendant's carport and the check made out to Frito-Lay that was found in Defendant's home safe. Fingerprint evidence was also presented that demonstrated Defendant was a prior- convicted felon at the time of these offenses.

After a multi-day jury trial, Defendant was convicted on all charges enumerated above that were brought against him in the bill of information. After receiving a presentence investigative report, the trial court sentenced Defendant to forty years at hard labor for armed robbery; ten years at hard labor for possession of a firearm by a convicted felon; twenty years at hard labor for each conviction for attempted second degree murder; ten years at hard labor for intimidating a witness; and one year at hard labor for illegal possession of a stolen firearm. The court imposed all the sentences concurrently.

Defendant timely appealed, presenting four assignments of error argued by court-appointed counsel, as well as one pro se assignment of error. They are as follows: (1) the jury erred in returning a verdict of guilty of illegal possession of a stolen firearm; (2) the convictions were based on circumstantial evidence that failed to establish Defendant's identity beyond a reasonable doubt, and the jury was unduly

influenced by an invalid charge, namely the illegal possession of a stolen firearm;[1] (3) the trial court erred in denying Defendant's challenges for cause regarding prospective jurors Katrina McCain ("McCain") and John Parker ("Parker"), and jurors James Alwell ("Alwell") and Kenneth Taylor ("Taylor"); (4) the trial court erred in granting the State's challenges for cause regarding prospective jurors Ben Rosier ("Rosier") and Jonathan Richards ("Richards"); and (5) the trial court erred in allowing Defendant to proceed to trial in leg shackles.

## ERRORS PATENT

In compliance with La.Code Crim.P. art. 920, we review all criminal appeals for errors patent on the face of the record. *See State v. Oliveaux*, 312 So.2d 337 (La.1975). After carefully reviewing the record, we find one error patent, as well as court minutes of sentencing that require correction.

We first note the trial court sentenced Defendant to serve ten years at hard labor without benefit of parole, probation, or suspension of sentence for intimidating a witness. Louisiana Revised Statutes 14:129.1, the applicable sentencing statute, does not authorize a restriction of benefits. Accordingly, Defendant's sentence is illegally excessive. Therefore, we amend Defendant's sentence for intimidating a witness to delete the denial of benefits and remand to the trial court with instructions to amend the court minutes accordingly.

Finally, our review of the sentencing transcript shows the trial court imposed a $1,000.00 fine as required by La.R.S. 14:95.1(B) for Defendant's conviction for possession of a firearm by a convicted felon. Notwithstanding, the court minutes fail to reflect the imposition of this fine. "It is well established that where there is a conflict between the minutes and the transcript, the transcript shall prevail." *State v.*

---

[1] Defendant urges this assignment of error pro se.

3

*Edwards*, 626 So.2d 501, 503 (La.App. 3 Cir. 1993), *writ denied*, 93–3125 (La. 2/3/95), 649 So.2d 400.  Therefore, we direct the trial court to correct the sentencing minutes to include the $1,000.00 fine that was imposed for Defendant's conviction of possession of a firearm by a convicted felon.

### SUFFICIENCY OF THE EVIDENCE

There is a common thread between the first two assignments of error, namely, the sufficiency of the evidence regarding Defendant's conviction for the illegal possession of a stolen firearm and the sufficiency of the evidence as to all of Defendant's convictions.  In the first assignment of error, Defendant contends the State failed to present sufficient evidence to support his conviction for the illegal possession of a stolen firearm.[2]  In the second assignment of error, Defendant contends the evidence was insufficient to prove any of the charged offenses and particularly asserts that the State failed to establish his identity beyond a reasonable doubt.  Thus, we will address those two assignments of error first.

In *State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371, we articulated the well-established analysis for such claims:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981).  It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)).  In order for this Court to affirm a conviction, however, the record must reflect

---

[2] Although the State concedes that this conviction should be reversed for insufficient evidence, we have chosen to discuss this assignment of error to more fully address the second aspect of these assignments of error, the latter having been raised pro se.

4

that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*Illegal Possession of a Stolen Firearm*

Louisiana Revised Statutes 14:69.1(A)(1) provides: "Illegal possession of stolen firearms is the intentional possessing, procuring, receiving, or concealing of a firearm which has been the subject of any form of misappropriation." In *State v. Johnson*, 09-862, p. 9 (La.App. 3 Cir. 2/3/10), 28 So.3d 1263, 1270, this court said, "Based on [La.R.S. 14:69.1], the State had to prove that the defendant intentionally possessed a firearm, that the firearm was the subject of robbery or theft, and that he knew or should have known the firearm was the subject of a robbery or theft."

Our careful review of the record shows a paucity of evidence regarding this offense. Although the State determined that the handgun was stolen from James Smith and that robbery was not reported, the evidence is void of any proof that Defendant was involved with the theft or that he knew or should have known the handgun was stolen. Therefore, we reverse Defendant's conviction for illegal possession of a stolen firearm and vacate the sentence imposed for that conviction.

*Identity Evidence*

In his pro se assignment of error, Defendant first contends the State failed to establish his identity beyond a reasonable doubt.[3] The jurisprudence on this area of the law is well established:

> "In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). . . . [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La.1984). Furthermore, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is

---

[3] Defendant does not contest in his pro se brief that the crimes occurred.

5

required to negate any reasonable probability of misidentification. *State v. Weary*, 03-3067 (La. 4/24/06), 931 So.2d 297; *State v. Neal*, 00-0674 (La. 6/29/01), 796 So.2d 649. Positive identification by only one witness is sufficient to support a conviction. *Weary*, 03-3067 at p. 18, 931 So.2d at 311; *Neal*, 00-0674 at p. 11, 796 So.2d at 658; *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988). It is the factfinder who weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. *State v. Bright*, 98-0398, p. 22 (La. 4/11/00), 776 So.2d 1134, 1147.

*State v. Hughes*, 05-992, pp. 5-6 (La. 11/29/06), 943 So.2d 1047, 1051.

On the subject of the armed robbery conviction, Davis, the Frito-Lay deliveryman, identified Defendant as the armed robber. Davis described the events of the robbery, including that Defendant's face was not covered. He also identified Defendant in open court. The evidence further showed that a check made out to Frito-Lay taken during the robbery was found in Defendant's home safe.

Regarding the attempted murder convictions, Davis testified that when he and his supervisor drove through the neighborhood near the crime scene to see if they could find Davis's stolen workbag, someone shot at them, striking the truck three times. Although Davis did not see the shooter, area resident Carpenter testified that Defendant admitted to him both the shooting and the earlier robbery. Also, the jury heard a prior recorded statement by another area resident, Hampton, that she had seen Defendant firing a handgun, although she was not sure what his target was.[4] Further, a bullet recovered from the truck matched a handgun that was discarded at Defendant's residence near Davis's cellphone and product scanner. Also, in a telephone call from the jail, Defendant admitted the police had recovered "my gun, my cell phone, and a check out my safe."

---

[4]At trial, Hampton stated she did not remember the shooting incident. She testified that she had received multiple threats via telephone that sought to dissuade her from testifying. As a result, the State played part of her prior recorded statement so that she could identify her voice. The State then walked Hampton through a transcription of her recording to refresh her memory.

6

Concerning Defendant's conviction for possession of a firearm by a convicted felon, not only does some of the evidence already mentioned put a weapon in Defendant's hand, fingerprint evidence demonstrated that at the time of the offenses, he was a prior-convicted felon.

The remaining conviction, intimidating a witness, was supported by testimony that Defendant contacted associates via the jail phone line, telling them to harm or frighten witnesses in the case. In his testimony, even though Defendant denied directly threatening Hampton, he admitted he made various threatening statements, but claimed he was merely angry.

In light of *Hughes*, we find, viewing the evidence in a light most favorable to the prosecution, that the State proved the elements of each crime charged, including Defendant's identity, beyond a reasonable doubt. As discussed above, the record is replete with evidence, including direct evidence, that Defendant was the person who committed these crimes. Therefore, we find no merit to this assignment of error.

However, before leaving this discussion, we address Defendant's further assertion that his conviction for possession of a stolen weapon, now reversed and vacated, unduly influenced the jury. In all aspects, save our reversal of Defendant's conviction for possession of a stolen weapon, the State convicted Defendant for each of the other crimes with evidence, direct and circumstantial, that proved beyond a reasonable doubt that Defendant perpetrated those crimes. Therefore, we find no merit to Defendant's contention that his conviction for one of the crimes for which he was charged tainted the jury's convictions on all the remaining crimes. This well-developed record shows just the opposite.

Defendant's pro se assignment of error lacks merit.

## CHALLENGES FOR CAUSE

7

Defendant makes two arguments, attacking the trial court's rulings on the various challenges for cause. Defendant first contends the trial court erred when it denied his challenges for cause regarding prospective jurors McCain and Parker and jurors Taylor and Alwell.[5] Defendant next contends the trial court erred when it granted the State's challenges for cause regarding prospective jurors Rosier and Richards. After referencing the general jurisprudence on challenges for cause, we will separately address Defendant's two arguments.

In *State v. Juniors*, 03-2425, pp. 7-8 (La. 6/29/05), 915 So.2d 291, 304–05, our supreme court stated:

> Louisiana Constitution article I, § 17 guarantees to a defendant the right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. . . . When a defendant uses all twelve of his peremptory challenges, an erroneous ruling of a trial court on a challenge for cause that results in depriving him of one of his peremptory challenges constitutes a substantial violation of his constitutional and statutory rights, requiring reversal of the conviction and sentence. *See State v. Cross*, 93–1189, p. 6 (La. 6/30/95), 658 So.2d 683, 686; *State v. Bourque*, 622 So.2d 198, 225 (La. 1993), *overruled on other grounds by State v. Comeaux*, 93–2729 (La. 7/1/97), 699 So.2d 16. Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and a defendant has exhausted his peremptory challenges. *State v. Robertson*, 92–2660, p. 3 (La. 1/14/94), 630 So.2d 1278, 1280; *State v. Ross*, 623 So.2d 643, 644 (La. 1993). Therefore, to establish reversible error warranting reversal of a conviction and sentence, defendant need only demonstrate (1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges. *Cross*, 93–1189 at 6, 658 So.2d at 686; *Bourque*, 622 So.2d at 225.

Moreover, in *State v. Dotson*, 16-473, p. 17 (La. 10/18/17), 234 So.3d 34, 45-46, our supreme court stated:

> Clearly, La. C.Cr.P. art. 797(2) does not require that a prospective juror state with absolute certainty that he/she cannot be impartial in order to be removed for cause. However, in the absence of such a statement, the trial court's denial of a challenge for cause will not be reversed if, on review of the entire *voir dire* examination, the prospective juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. *[State v.] Passman*, 345 So.2d [874] at 880 [La. 1977)]. Reversal is appropriate only where

---

[5] The record shows Defendant used all his peremptory challenges.

it appears, upon review of the *voir dire* examination as a whole, that the trial judge's exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to the accused. *Id.; see [State v.] Dorsey*, 10-0216 at 28, [(La. 1977)] 74 So.3d at [603] 625; *State v. Lee*, 93-2810 (La. 5/23/94), 637 So.2d 102, 108. This standard of review is utilized "because the trial judge has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questions by the parties' attorneys." *Lee*, 93-2810 at 9, 637 So.2d at 108. "Such expressions and intonations are not readily apparent at the appellate level where review is based on a cold record." *Id*. As noted in *State v. Miller*, 99-0192 (La. 9/6/00), 776 So.2d 396, because of the "complicated and oftentimes daunting" task faced by a trial court in deciding "challenges for cause of prospective jurors who give equivocal . . . responses during *voir dire*," "an appellate court should accord great deference to the [trial] court's ruling on a challenge for cause, which is necessarily based, in part, on the court's personal observations during questioning." *Id.*, 99-0192 at 14, 776 So.2d at 405-06.

*Trial Court's Denial of Defendant's Challenges for Cause*

**Prospective juror, McCain**: Defendant contends the trial court erred when it denied his cause challenge as to McCain. His contention is twofold: first, McCain allegedly said if Defendant did not testify, she would likely vote guilty; second, she has relatives involved in law enforcement.

Defendant's argument to the trial court and before us is that McCain said Defendant would be guilty if he would not testify. Our review of the record shows this question first arose when the State asked the prospective jurors en masse if they would be biased against Defendant if he chose not to testify. Our review of the record indicates none of the jury venire responded positively to that question. Thus, to this extent we find no support for Defendant's first contention.

Later, defense counsel specifically asked McCain about Defendant's right not to testify. She responded, "I just feel like why wouldn't he.... Like if, he's not, if he feels like he's not guilty why wouldn't he go against it."[6] Defendant asked nothing

---

[6] Defendant points out that the State failed to rehabilitate McCain. Unlike Defendant's assertion, McCain never unequivocally stated she would hold Defendant's failure to testify against him. McCain's response, conditional at best, neither required the State's rehabilitation nor relieved Defendant of his burden of demonstrating, through further questioning, that McCain lacked

further. Nonetheless, in argument to the trial court, defense counsel, extrapolating from McCain's limited statement, urged the trial court to grant his cause challenge because McCain "[would] hold that against him if he didn't testify."

When this cause challenge was made, the State interjected:

> All he asked her was a simple question, uh, and she indicated that she may have some issue with that. When I questioned her and the rest of the panel, I went over that thoroughly. None of them had any issue if he did not testify. Matter of fact, . . . I had to go over that over and over again. They were all satisfied with that. She did not say that to [defense counsel]. [Defense counsel] spent about five seconds with her before this guy over here who had the situation with his daughter in Bossier Parish began to speak, and then [defense counsel] diverted his attention to him, never went back to her to follow up on that but I did, I had earlier.

In its ruling on this cause challenge, the trial court recognized McCain's hesitancy. Nevertheless, the trial court stated, "[I]t was not the impression of the Court . . . she would hold it against [Defendant], if he did not testify. [The State] is correct that . . . she indicated . . . during his voir dire that she understoood, that . . . he did not have to testify."

*Dotson* admonishes trial courts to avoid seizing upon snippets of testimony in the evaluation of cause challenges. *Dotson,* 234 So.3d 34. Rather, the court is directed to examine the entire voir dire examination. In the present case, the trial court performed its function as *Dotson* admonished—it reviewed the voir dire examination as a whole.

As a reviewing court, *Dotson* cautions us to give great deference to the trial court's determination on challenges for cause because that resolution is based upon the trial court's personal observation during the entire voir dire examination. Abiding by that instruction in the present case, we cannot say the trial court exercised

_____

impartiality. *Dotson*, 234 So.3d 34; *see also State v. Taylor*, 99-1311, p. 8 (La. 1/17/01), 781 So.2d 1205, 1214 (holding that "[t]he party seeking to exclude the [prospective] juror has the burden to demonstrate, through questioning, that the [prospective] juror lacks impartiality.")

that discretion in an arbitrary or unreasonable manner to prejudice Defendant. Thus, we find no support for Defendant's assertion.

Defendant next draws our attention to another basis for his cause challenge, namely, McCain's association with law enforcement. During voir dire, McCain told the court that her husband and father-in-law are employees of the corrections system; her husband is a counselor at the Pollock Prison, and her father-in-law is a warden at the Cottonport Prison.

This court has long recognized that relationships to members of law enforcement do not, by themselves, support challenges for cause. *State v. Williams*, 447 So.2d 495 (La.App. 3 Cir.), *writ denied*, 450 So.2d 969 (La.1984). The record shows McCain was forthright about her familial relationship with members of law enforcement. Despite that, McCain unambiguously stated when questioned by both Defendant and the State that these relationships in no way would influence her, and she would be fair and impartial if selected. After carefully considering both aspects of Defendant's argument, we find the trial court did not err when it refused Defendant's cause challenge to McCain.

**Prospective juror, Parker**: Defendant next contends the trial court erred when it denied his challenge for cause as to Parker. He argues that Parker, a retired Alexandria Police Department employee and part-time Alexandria crime prevention officer, should have been successfully challenged for cause. Defendant's argument is threefold: (1) Parker knew every police officer on the State's witness list; (2) he is employed as a crime prevention officer; and (3) his son is a Louisiana State Trooper, his nephew is a Rapides Parish jailer, his brother is a narcotics' officer with the Rapides Parish Sheriff's Office, and his father was a police officer.

Defendant's challenge for cause involves two lines of analysis, one that involves Parker as an actively employed law enforcement officer and another that

11

involves Parker as one who has familial connections to law enforcement. We will address these separately.

In *State v. Ballard*, 98-2198 (La. 10/19/99), 747 So.2d 1077, 1079-80,[7] the Louisiana supreme court stated:

> Law enforcement officers are sworn to uphold the laws of the state, which laws include the provision of a fair trial to each and every defendant. If a law enforcement officer testifies under oath during voir dire that he can be a fair and impartial juror, the trial judge has the discretion to determine whether that officer is speaking the truth. The disqualification of all law enforcement officers from service on a jury disregards whether or not the judge, whose rulings on challenges for cause are given great deference in all other instances, accepts the officer as a fair and impartial juror. We find that such a disqualification amounts to an irrebuttable presumption of untrustworthiness in law enforcement officers and is an affront to police officers in this state. When this court in [*State v.*] *Simmons*, [390 So.2d 1317 (La. 1980)] held: "[t]he guarantee of an impartial trial in Article 1, Section 16, of the Louisiana Constitution of 1974 is offended by the presence on a jury of a badge-wearing law enforcement officer," *id.* at 1318, it failed to explain this connection, all the while implying that wearing a badge is somehow a mark of intrinsic bias, offending those who have been awarded a badge as a police officer in this state.

The record shows Parker was questioned extensively on his law enforcement employment. Parker made it abundantly clear that despite his employment, he would be fair and impartial and would not give law enforcement testimony any greater weight. Even after Defendant further pressed Parker on the question, he reiterated he would "give fair consideration to both sides."

As regards Parker's familial relationships with law enforcement officers, we recognized earlier in this opinion that this court has long recognized that relationships to members of law enforcement do not, by themselves, support challenges for cause. *Williams*, 447 So.2d 495.

---

[7] In argument to this court, Defendant relies on *State v. Mitchell*, 475 So.2d 61 (La.App. 2 Cir. 1985) to support his position. *Mitchell* relied upon *Simmons*, 390 So.2d 1317. *Ballard* overruled *Simmons*. *Ballard*, 747 So.2d 1077.

When we review Parker's forthright testimony during voir dire, we find no basis to justify a cause challenge as to him either as a law enforcement officer or his familial relationships with law enforcement officers.[8]  Therefore, we find no merit to Defendant's contention that the trial court erred in failing to dismiss Parker for cause.

**Juror, Taylor**: Defendant contends that the trial court erred when it failed to grant his challenge for cause as it related to Taylor.  Defendant argued that Taylor, the director of a religious charitable organization, would be unable to fully concentrate on the trial because he had a paid, non-refundable three-night stay in Dallas that began the following Sunday night.

As a matter of background, Defendant's jury was selected on June 5-6, 2018, a Tuesday and Wednesday.  On June 7, 2018, a Thursday, the jury began hearing evidence.  On June 8, 2018, a Friday, the jury found Defendant guilty as charged on all counts.

Defendant challenged Taylor for cause on the speculative ground that he would be unable to concentrate on the trial.  Notwithstanding, our review of the record shows no instance where Taylor expressed that he would not be able to concentrate on the trial; rather, he simply brought his future schedule to the trial court's attention.

Taylor was a seasoned juror, having served on multiple juries, two involving criminal trials.  Defendant has made no showing that Taylor would not have been impartial or that he was prejudiced in any way by Taylor's inclusion as a juror.

---

[8] Compare *State v. Aguillard*, 14-0316 (La.App. 4 Cir. 3/4/15), 158 So.3d 976, *writ granted, in part*, *and remanded*, 15-589 (La. 2/26/16), 184 So.3d 1273, *writ denied after remand*, 15-589 (La. 10/15/18), 254 So.3d 68 (distinguishing *Ballard* and holding that employment in law enforcement would unduly influence the verdict when the officer in question was the commander of the investigative unit responsible for the prosecution before the court and the State's witness was the law enforcement officer's supervisor).

Under these facts, we find the trial court did not abuse its discretion in an arbitrary or unreasonable manner, resulting in prejudice to the accused. Therefore, we find no merit to Defendant's argument that the trial court should have excused Taylor for cause.

**Juror, Alwell:** The thrust of Defendant's argument is that Alwell's father was a chip salesman, as was the victim of the crime for which Defendant was on trial, and his father was robbed. He contends that when Defendant explored Alwell's familial history, Alwell did not know if he could find Defendant not guilty because of this.

"[T]he fact that a juror may have painful memories associated with the subject of a criminal trial is not listed as a basis for a challenge for cause under La.C.Cr.P. art. 797." *Dotson*, 234 So.3d at 41, quoting *State v. Magee*, 13-1018, p. 12 (La.App. 5 Cir. 9/24/14), 150 So.3d 446, 454, *writ denied*, 14-2209 (La. 10/2/15), 178 So.3d 581. A prospective juror's relationship to a person who was the victim of crime likewise does not disqualify a prospective juror from serving. *Id.* "The law does not require that a jury be composed of individuals who have not personally been a crime victim or who do not have close friends or relatives who have been crime victims. It requires that jurors be fair and unbiased." *Id.* at 42.

In the present case, the record shows Alwell let it be known that his father's encounter as the victim of a robbery was on his mind. He also said that it is possible that it would be difficult for him to sit as a juror on the present case. Finally, however, Alwell concluded, "Now, I'm not gonna say it will but it's possible."

> [T]he purpose of allowing challenges for cause is to secure a fair and impartial trial. The key to securing this right is to ascertain whether there is anything in the disclosed relationship ... that would influence the juror's judgment or that would persuade him or her to decide the case on any basis other than fairness and the evidence presented in court.

*Juniors*, 915 So.2d at 307 (citations omitted).

14

When presented with this challenge for cause, the trial court concluded the stated ground was insufficient to rise to the level that justified a challenge for cause. We agree. Although Alwell expressed a possibility that his familial history would make it difficult for him to sit as a juror, the burden was on Defendant to follow-up with questions to reasonably show that Alwell could not have been fair and that he could not have rendered an impartial verdict according to the law and the evidence. This he did not do.

For the foregoing reasons, we find Defendant's assignment of error, urging this court to reverse the trial court's multiple denials of the challenges for cause, lacks merit.

*Trial Court's Grant of State's Challenges for Cause*

Defendant next contends the trial court erred when it granted the State's cause challenges as it related to prospective jurors Rosier and Richards.

Louisiana Code of Criminal Procedure Article 800(B) provides, "The erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law."

Based upon La.Code Crim.P. art. 800(B), a defendant does not have grounds to complain about the granting of the State's challenge for cause, unless the effect of the ruling is to allow the State to exercise more peremptory challenges than the law allows. *See State v. Morgan*, 17-588 (La.App. 4 Cir. 5/16/18), 244 So.3d 568, *writ denied*, 18-987 (La. 12/17/18), 258 So.3d 603; *State v. Harris*, 17-303 (La.App. 5 Cir. 12/20/17), 235 So.3d 1354, *writ denied*, 18-160 (La. 6/15/18), 257 So.3d 675; *State v. Nellum,* 13-360 (La.App. 4 Cir. 2/12/14), 136 So.3d 120, *writ denied*, 14-516 (La. 10/24/14), 151 So.3d 598. Here, our meticulous review of the record shows

the State used only ten peremptory exceptions. Accordingly, Defendant has no ground for complaint. Therefore, Defendant's assignment of error lacks merit.

## LEG RESTRAINTS

Defendant contends the trial court erred in allowing him to proceed to trial in leg restraints. Defendant presents two arguments: (1) Defendant's leg restraints were not called for because the record is void of evidence that he posed a threat, was disrespectful, or disruptive; and (2) the leg restraints denied him a fair and impartial trial.

As to Defendant's argument that he was not a security risk and should not have been restrained, we have combed the record and find that this issue was not raised in the trial court. Thus, Defendant may not raise this issue for the first time on appeal. *State v. Hypolite*, 13-1365 (La.App. 3 Cir. 5/14/14), 139 So.3d 687, *writ denied*, 14-1242 (La. 1/23/15), 159 So.3d 1056.

Defendant's argument, too, that the leg restraints denied him a fair and impartial trial is likewise without merit. Although the record does not have a description of the leg restraints, the trial court made two observations when it addressed Defendant's motion for a new trial. First, the trial court noted for the record that the leg restraints were under Defendant's clothes. Second, the trial court explained that Defendant did not limp when he approached and left the witness stand during trial.

The mere fact that a defendant is shackled or garbed in the presence of the jury does not alone constitute a basis for reversal. *State v. Ellis*, 487 So.2d 752 (La.App. 3 Cir.), *writs denied*, 492 So.2d 1216, 1217 (La.1986). Considering the trial court's first-hand observation of Defendant at trial, there is nothing in the record which shows the use of leg restraints prejudicially affected Defendant or warranted a reversal of his conviction.

Therefore, this assignment of error lacks merit.

## DISPOSITION

For the foregoing reasons, we reverse Defendant's jury conviction for illegal possession of a stolen firearm and vacate the sentence imposed for that conviction. In all other respects, we affirm Defendant's convictions. We further amend Defendant's sentence for intimidating a witness to delete the denial of benefits and remand to the trial court with instruction to amend the court minutes accordingly. Lastly, we remand this case to the trial court to correct the sentencing minutes to include the $1,000.00 fine was imposed for Defendant's conviction of possession of a firearm by a convicted felon.

**CONVICTION REVERSED, IN PART, AND THAT SENTENCE VACATED; OTHER CONVICTIONS AFFIRMED; SENTENCE AMENDED, IN PART; AND CASE REMANDED WITH INSTRUCTIONS.**